**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* v. CHARLES TYSON, *Defendant.* | No. 3:13-cr-002 (MPS) |

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

Defendant Charles Tyson was sentenced on May 18, 2016 to time served and to a four-year term of supervised release. ECF No. 341 at 1. On December 14, 2017, the Court revoked Mr. Tyson's term of supervised release because he admitted to violating multiple conditions of release, and the Court imposed a sentence of 36 months of imprisonment, 24 months of which were to be served consecutive to a state sentence. ECF No. 412 at 1–3. He is currently in the custody of the Connecticut Department of Correction ("DOC") at the Osborn Correctional Institution. He was granted parole on his state sentence on June 19, 2020, and immediately began serving the 24-month consecutive sentence of imprisonment imposed by this Court. ECF No. 431 at 1.[1]

On June 4, 2020, Mr. Tyson filed a motion under 18 U.S.C. § 3582(c), seeking a reduction of his term of imprisonment and release from custody due to the dangers posed by the COVID-19 virus, particularly in light of his underlying health conditions. ECF No. 431. Mr. Tyson filed medical records from Osborn CI on June 5, 2020. ECF No. 434. The Government

---

[1] Today, Mr. Tyson's counsel filed an update indicating that the State Parole Board granted him parole on June 19, 2020. ECF No. 439.

filed a brief in opposition to Mr. Tyson's motion on June 12, 2020. ECF No. 435. Mr. Tyson provided an update regarding his scheduled parole hearing on June 15, 2020, and another update today indicating that the Connecticut Parole Board had voted to grant him parole. ECF Nos. 436, 439. For the following reasons, I deny Mr. Tyson's motion for compassionate release.

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Before the First Step Act was enacted in 2018, this provision did not provide for the filing by the defendant of a motion with the Court, leaving the decision whether to file a motion seeking an order of "compassionate release" exclusively to the Director of the BOP. The First Step Act amended the statute to the text shown above. The Sentencing Commission, however, has not updated its policy statement applicable to Section 3582(c)(1)(A) to take account of the defendant's right, after exhausting remedies, to file a motion with the Court. *See* U.S.S.G. § 1B1.13. I therefore agree with several district courts that have addressed this issue and found that the provisions of U.S.S.G. § 1B1.13—though still providing useful guidance—are obsolete, and thus that the statutory language requiring that the sentence reduction be "consistent with applicabl[e] policy statements by the Sentencing Commission" is no longer operative. *See, e.g., United States v. Rodriguez*, 2020 WL 1627331 *4 (E.D. Pa. April 1, 2020). [2]

---

[2] Even if I found that U.S.S.G. § 1B1.13 was operative—and binding due to its incorporation

Therefore, I may reduce Mr. Tyson's term of imprisonment in this case, 3:13-cr-002, if (1) he has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, and (2) I find, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

I have previously found the statutory exhaustion requirement to be mandatory and not excusable by the Court where the defendant is in BOP custody. *United States v. Nathaniel Smith*, 2020 WL 1903160 (D. Conn. Apr. 17, 2020). It appears, however, that Mr. Tyson is not in BOP custody at this point. As noted, the state parole board granted him parole only five days ago. In response to an order, ECF No. 433, this Court issued before the state parole board's recent decision, the Government indicated that there is a federal detainer for Mr. Tyson and that, per an arrangement between the United States Marshal's Service and the Connecticut DOC, the DOC would keep Mr. Tyson in its custody—even if parole was granted—in light of the detainer. ECF No. 435 at 3–4. It thus appears that Mr. Tyson remains in DOC custody—not BOP custody—and therefore has no way to petition a BOP Warden for compassionate release. ECF No. 431 at 2. Mr. Tyson's motion argues that this circumstance warrants excusing him from satisfying the exhaustion requirement. Other courts in this district have found that inmates

---

into the statute—it would not affect the outcome here. The policy statement is more restrictive than the statute alone. For example, it requires a finding that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). In addition, the Application Notes might be read to suggest that a defendant such as Mr. Tyson who seeks release based on medical conditions must demonstrate that he or she not only "suffer[s] from a serious physical or medical condition" but also one "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, App. Note 1(A)(ii). Even if Mr. Tyson's conditions qualified him for the latter description, he would not qualify for a finding that he was not a danger to the community, for the reasons discussed below. In any event, as discussed below, the Section 3553(a) factors—which must be considered under both the statute and the Guideline—weigh heavily against the requested reduction in Mr. Tyson's term of imprisonment.

may file a motion for compassionate release with the court when the inmate sought release from the warden of his facility, even if he was detained at a non-BOP facility. *E.g.*, *United States v. Jepsen*, 2020 WL 1640232 *2 (D. Conn. April 1, 2020) (finding exhaustion for inmate at Wyatt Detention Facility, after he made attempts to request compassionate release from the warden at Wyatt but was told that the Warden would not or could not grant the request because Wyatt is not a BOP facility); *United States v. Morales*, No. 3:19-CR-00121 (KAD), 2020 WL 2097630, at *2 n.1 (D. Conn. May 1, 2020) (noting that the "defendant is without any administrative remedy to exhaust" and permitting defendant to move the court for compassionate release where defendant was held at Wyatt, sought release from the warden at Wyatt, but the "warden at Wyatt has no authority under the Act to seek compassionate release"); *see also Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."). Mr. Tyson gives no indication that he has asked the Warden of Osborn CI or any other DOC staff for release, distinguishing this case from both *Jepsen* and *Morales*.

Nevertheless, I need not decide in this case whether Mr. Tyson has exhausted his administrative remedies, or whether he is excused from doing so, because the Government has forfeited the issue. Although the Government mentions the exhaustion requirement in its brief in summarizing the applicable law, ECF No. 435 at 10–11, it makes no argument that Mr. Tyson has failed to exhaust or that he should not be excused from exhausting under these circumstances—even after Mr. Tyson raised the issue in his motion. The Sixth Circuit has held that the exhaustion requirement in Section 3582(c)(1)(A) is not a jurisdictional rule, but a mandatory claims-processing rule, which "bind[s] the courts only when properly asserted and not forfeited." *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. Jun. 2,

4

2020). Although the Second Circuit has not addressed this issue, District Courts in this Circuit have also concluded that the Government can waive or forfeit exhaustion. *See, e.g.*, *United States v. Russo*, No. 16-CR-441, 2020 WL 1862294, at *4–5 (S.D.N.Y. Apr. 14, 2020) ("The exhaustion requirement in Section 3582(c) is therefore properly understood as a claim-processing rule . . . . [O]ne key consequence of the section not being jurisdictional is that the Government can waive the affirmative defense of exhaustion."); *United States v. Gentille*, No. 19 Cr. 590, 2020 WL 1814158, at *3 (S.D.N.Y. Apr. 9, 2020) ("The Court agrees with the Government that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, but rather is a claims-processing rule that the Government can waive by failing to raise an exhaustion argument."); *United States v. Gonzalez*, No. 3:17-cr-00062, 2020 WL 2079110, at *7 (D. Conn. Apr. 30, 2020) (indicating that, "if the Government decides to waive any objection to the exhaustion requirements," the Court would rule on the merits of the motion). And "[i]f the right to assert the defense of failure to exhaust can be waived, it can also be forfeited." *Russo*, 2020 WL 1862294, at *5.[3] As the Government has not argued that Mr. Tyson failed to exhaust or that exhaustion is otherwise a barrier to relief, even after Mr. Tyson asserted in his motion that he could not exhaust in this case, I find that the Government has forfeited the exhaustion defense in this case. I therefore turn to the merits.

To begin with, Mr. Tyson's documented medical history does place him at increased risk of serious illness or death should he contract COVID-19. He has submitted medical records showing that he suffers from prediabetes, hypertrophic cardiomyopathy (a disease in which the heart muscle becomes abnormally thick), asthma, and hypertension, among other

---

[3] While "waiver" and "forfeiture" are sometimes used interchangeable, they are not synonymous. "[F]orfeiture is the failure to make the timely assertion of a right[;] waiver is the 'intentional abandonment of a known right.'" *Hamer v. Neighborhood Hous. Servs. Of Chicago*, 138 S. Ct. 13, 17 n.1 (2017).

5

conditions. ECF No. 434 at 1 (Osborn CI record from 2/14/2020 medical encounter); ECF No. 431 at 5. The CDC states that serious heart conditions may put people at higher risk for severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions. And other courts in this Circuit have held that pre-existing medical conditions, including heart conditions, combined with the increased risks of COVID-19 transmission in prisons, constitute "extraordinary and compelling reasons" warranting relief. *See United States v. Acoff*, No. 3:09CR073 (MPS), 2020 WL 2781798, at *2 (D. Conn. May 29, 2020) (collecting cases). I agree with Mr. Tyson, therefore, that his pre-existing health conditions and his incarceration place him at a higher risk of contracting the virus causing COVID-19.

The Section 3553(a) factors, however, weigh heavily against the requested reduction in Mr. Tyson's term of imprisonment. Mr. Tyson has an extensive criminal record, one that displays a pattern of criminal conduct spanning from his late teens into his late thirties. It includes offenses for robbery and assault, forgery and larceny, and drug distribution. In addition, unlike most who enter the criminal justice system, and unlike even those who return once or twice, Mr. Tyson has shown no signs of "ageing out" out of criminal conduct—that is, of diminishing his criminal activity as he grew older. Most recently, at age 38, Mr. Tyson was selling crack cocaine in Hamden, brandishing a gun, and leading police on a reckless high-speed chase through the streets of New Haven. Further, as the Government points out, Mr. Tyson engaged in this conduct while on supervised release under a sentence imposed by this Court. Indeed, as the Government notes, Mr. Tyson also repeatedly violated conditions of release before his sentencing in this case. Even during his current prison sentence—now into his early 40s— Mr. Tyson has continued his pattern of receiving disciplinary tickets while incarcerated. All of

this suggests that Mr. Tyson continues, even at his age and in his compromised medical condition, to present a substantial risk of recidivism and a danger to the public. Finally, Mr. Tyson has only just begun his sentence imposed on violation of supervised release, one that was essential to address his multiple breaches of trust with the Court and to protect the public.

On balance, I conclude, after considering the Section 3553(a) factors, that Mr. Tyson has failed to demonstrate extraordinary and compelling reasons warranting the requested reduction of his term of imprisonment.

I recently granted a motion under Section 3582(c)(1)(A) to reduce a term of imprisonment to time served for another convicted drug dealer with a lengthy criminal history, *see United States v. Acoff*, No. 3:09CR073 (MPS), 2020 WL 2781798, at *1 (D. Conn. May 29, 2020), and so some explanation of the differences between that case and this one is warranted. Like Mr. Tyson, Mr. Acoff had medical conditions—severe obesity and a serious heart condition—that placed him at higher risk for complications from COVID-19. And like Mr. Tyson, Mr. Acoff had a "substantial criminal record" and "spent the bulk of his adult years as a drug dealer." *Id.*, at *3. Mr. Acoff, however, is over ten years younger than Mr. Tyson and committed his crimes during his 20s. Further, although he had also twice led the police on a reckless vehicle pursuit, that conduct occurred while he was in his early 20s—an age that, experience shows, is often characterized by a level of impulsiveness approaching that seen in adolescence. The difference in age is also significant because, while there is at least hope that Mr. Acoff will "age out" of criminal conduct, the same cannot be said for Mr. Tyson. In addition, Mr. Acoff had served more than half of his federal sentence, while Mr. Tyson has just begun to serve his. Finally, in granting Mr. Acoff's Section 3582(c)(1)(A) motion, I noted that the case presented "a close call." *Id.*, at *3. Mr. Tyson's physical condition and increased susceptibility to

the risks posed by COVID-19 do not make the decision in his case an easy one either, but I reach the opposite conclusion on the merits. Specifically, I find that Mr. Tyson's history, including his conduct after repeated warnings and "second chances" while on pretrial and supervised release, defeats his effort to show that there are extraordinary and compelling reasons warranting a reduction of his term of imprisonment.

Therefore, for the foregoing reasons, Mr. Tyson's motion for compassionate release (ECF No. 431) is DENIED.

IT IS SO ORDERED.

Dated: Hartford, Connecticut
 June 24, 2020

/s/
Michael P. Shea, U.S.D.J.